```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                        TAMPA DIVISION
```

SIROUS RAZIPOUR,

        Plaintiff,
v.                                          Case No. 8:20-cv-729-T-33TGW

JOULE YACHT TRANSPORT, INC.,
and MOLLY'S MARINE SERVICE, LLC,

        Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Crossclaim-Defendant Joule Yacht Transport, Inc.'s Motion to Dismiss Crossclaim (Doc. # 31), filed on June 10, 2020. Crossclaim-Plaintiff Molly's Marine Service, LLC, responded on July 1, 2020. (Doc. # 35). Joule replied on July 21, 2020. (Doc. # 44). For the reasons set forth below, the Motion is **GRANTED**.

**I.   Background**

On July 12, 2018, Plaintiff Sirous Razipour visited Molly's to discuss shipping his newly purchased vessel, the *M/V Che Jac*, to his home city of Newport Beach, California. (Doc. # 1-1 at ¶ 7). Razipour contracted with Molly's to prepare the vessel for shipping and Joule to transport the

1

vessel by truck from Naples, Florida, to Newport Beach. (Id. at ¶¶ 8-9, 13). Joule's agent, Dave Thompson, advised Razipour that Joule would have a truck at Molly's shipyard to pick up the vessel on August 7, 2018. (Id. at ¶ 15). According to Thompson, transport would begin immediately, and the vessel would be delivered in Newport Beach no later than August 17, 2018. (Id. at ¶¶ 17-18).

On August 14, 2018, Razipour received a voicemail from Molly's inquiring about when the vessel would be picked up for transport. (Id. at ¶ 19). Molly's told Razipour that a representative from Joule had shown up to transport the vessel but did not have a truck able to move the vessel. (Id. at ¶ 20). Yet, Joule told Razipour that when it arrived, the vessel had not been properly prepared for transport. (Id. at ¶ 21).

Thereafter, Molly's removed the vessel's hard top and stored it for transport aboard the vessel. (Id. at ¶ 22). Thompson assured Razipour that the vessel would be picked up no later than August 22, 2018, and immediately transported directly to Newport Beach. (Id. at ¶ 24). On August 22, both Molly's and Joule confirmed that Joule had picked up the vessel for transport. (Id. at ¶¶ 25-26). Thompson advised

2

Razipour that the vessel was en route to Newport Beach and would arrive by the following week. (Id. at ¶ 26).

However, on August 27, 2018, Thompson told Razipour that Joule had not begun transporting the vessel, which was sitting in a boatyard in Pinellas County, Florida. (Id. at ¶ 27). According to Razipour, the vessel remained in Joule's open shipyard through the first few days of September 2018, "exposed to the elements (including the harsh rains of Florida), without connection to power to run her pumps, and with her drain plugs not having been removed from her hull." (Id. at ¶¶ 28-29).

The vessel ultimately arrived in Newport Beach on September 6, 2018, "with a substantial amount of water in her hull and in a seriously damaged condition." (Id. at ¶¶ 30-31). The vessel had "more than 150 gallons of water in the galley and engine room" and "suffered significant damage to her interior and several of her operating systems." (Id. at ¶¶ 32-33).

Razipour filed this action in the Sixth Judicial Circuit in and for Pinellas County, Florida, on February 21, 2020. (Doc. # 1-1). The complaint includes claims against Molly's

for breach of contract and negligence (Counts I and III) and against Joule for breach of contract (Count II), negligence (Count IV), and violations of the Carmack Amendment (Count V). (Id.). On March 27, 2020, Joule removed the case to this Court on the basis of federal question jurisdiction. (Doc. # 1). On March 30, 2020, Joule moved to dismiss Counts II and IV. (Doc. # 5). The Court granted Joule's motion on May 29, 2020, dismissing Counts II and IV as preempted by the Carmack Amendment. (Doc. # 30 at 8-10).

On May 8, 2020, Molly's filed a crossclaim against Joule for contribution. (Doc. # 27). Joule now moves to dismiss the crossclaim for failure to state a claim. (Doc. # 31). Molly's has responded (Doc. # 35), and Joule has replied. (Doc. # 44). The Motion is now ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the crossclaim and construes them in the light most favorable to the crossclaim plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004); see also Williams v. Jet One Jets, Inc., No. 1:08-cv-3737-

4

TCB, 2009 WL 10682155, at *2 (N.D. Ga. Nov. 19, 2009) (applying the typical Rule 12(b)(6) standard on a motion to dismiss a crossclaim). Further, the Court favors the crossclaim plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a [crossclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [crossclaim] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual allegations, documents central to or referenced in the [crossclaim], and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. Analysis

#### A. Carmack Preemption of Molly's Crossclaim

In this Motion, Joule first argues that Molly's crossclaim is preempted by the Carmack Amendment. (Doc. # 31 at 2-3). The Carmack Amendment, 49 U.S.C. § 14706, "creates a uniform rule for carrier liability when goods are shipped in interstate commerce." Smith v. United Parcel Serv., 296 F.3d 1244, 1246 (11th Cir. 2002). "The purpose of the Carmack Amendment is to protect shippers against the negligence of interstate carriers and 'to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.'" Fine Foliage of Fla., Inc. v. Bowman Transp., Inc., 901 F.2d 1034, 1037 (11th Cir. 1990) (quoting Reider v. Thompson, 339 U.S. 113, 119 (1950)). "To accomplish the goal of uniformity, the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods." Smith, 296 F.3d at 1246; see also Adams Express Co. v. Croninger, 226 U.S. 491, 505-06 (1913) (explaining in regard to the Carmack Amendment that "[a]lmost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state

regulation with reference to it."). The Carmack Amendment "preempts virtually any state law claim." United Van Lines, Inc. v. Shooster, 860 F. Supp. 826, 828 (S.D. Fla. 1992); see also UPS Supply Chain Sols., Inc. v., Megatrux Transp., Inc., 750 F.3d 1282, 1289 (11th Cir. 2014) (characterizing "the preemptive effect of the Carmack Amendment [as] quite broad"); U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc., 296 F. Supp. 2d 1322, 1339 (S.D. Ala. 2003)("[T]here [is] 'no such thing' as a state law claim against a common carrier for damage to goods in interstate transportation.").

The crux of Carmack-Amendment preemption is whether the relief requested affects the carrier's liability for losses arising from the delivery, loss of, or damage of goods.[1] See

---

1. Contrary to what Molly's argues in its response (Doc. # 35 at 3-4), it does not matter for our purposes that Molly's was not a party to the bill of lading. See, e.g., Hubbard v. All States Relocation Servs., Inc., 114 F. Supp. 2d 1374, 1381 (S.D. Ga. 2000) (finding preempted claims for the loss of goods despite no bill of lading). Molly's cites to a case from the District of Oregon for the proposition that state law claims are not preempted by the Carmack Amendment when made by non-parties to a bill of lading. (Doc. # 35 at 3-4). But the only reason the Carmack Amendment did not preempt a broker's indemnity claim against a carrier in that case was because the broker and carrier had a separate existing contractual agreement. See InTransit, Inc. v. Excel N. Am.

UPS Supply Chain Sols., 750 F.3d at 1291 (holding that the award of attorney's fees under an indemnity agreement is not preempted by the Carmack Amendment because such fees are an issue of costs, not liability); see also Charleston & W. Carolina Ry. Co. v. Varnville Furniture Co., 237 U.S. 597, 603-04 (1915) (finding a state penalty assessed against a carrier for failure to pay a claim preempted by the Carmack Amendment for enlarging the carrier's liability). Accordingly, "only claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption" under the Carmack Amendment. Starr Indem. & Liab. Co. v. CSX Transp., Inc., No. 3:14-cv-1455-J-39JBT, 2015 WL 12861143, at *1 (M.D. Fla. May 11, 2015) (quoting Smith, 296 F.3d at 1248-49); see also Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 383 (5th Cir. 1998) (finding preempted claims that were not "separate from the loss of [the plaintiffs'] property"); REI Transp., Inc. v. C.H. Robinson Road Transp., Inc., 426 F. Supp. 2d 1136, 1141 (D. Or. 2006); accord Edwards Bros., Inc. v. Overdrive Logistics, Inc., 581 S.E.2d 570, 572 (Ga. Ct. App. 2003) (allowing a claim pursuant to a separate brokerage contract). Regardless of whether the Court should adopt this rule, there is no such agreement between Molly's and Joule here.

Worldwide, Inc., 519 F.3d 693, 698 (7th Cir. 2008) (holding that the Carmack Amendment does not preempt a freight broker from recovering against a carrier who withholds payment under a contract separate from that between the shipper and carrier as such claims "do not affect a carrier's liability for lost or damaged goods").

However, federal courts have found that some state law claims between two *carriers* are not limited by the Carmack Amendment. See, e.g., Compania Naviera Horamar v. Marine Gears, Inc., No. 04-20856-CIV-JORDAN, 2005 U.S. Dist. LEXIS 51171, at *4-5 (S.D. Fla. Mar. 21, 2005) (finding a state tort crossclaim arising between two carriers to the same shipment of goods not preempted); Mid-Continent Int'l v. Evergreen Marine Corp., No. 87-c-2579, 1987 U.S. Dist. LEXIS 11734, at *5 (N.D. Ill. Dec. 14, 1987) (allowing a third-party complaint between two carriers). However, this exception exists only because the Carmack Amendment provides for it. See 49 U.S.C. § 14706(b) ("The *carrier* issuing the receipt or bill of landing under [this statute] or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the *carrier* over whose

9

line or route the loss or injury occurred the amount required to be paid to the owners of the property[.]" (emphases added)); see also 5K Logistics, Inc. v. Daily Exp., Inc., 659 F.3d 331, 335-36 (4th Cir. 2011) (explaining that Congress narrowly limited the application of apportionment as between *carriers*, "explicitly choos[ing] not to extend the apportionment remedy to 'brokers,'" for example). Within this narrow exception, federal courts have determined that claims between carriers are "to be apportioned according to common law negligence principles." See Compania, 2005 U.S. Dist. LEXIS 51171, at *4; see also Mid-Continent, 1987 U.S. Dist. LEXIS 11734, at *5-6 ("The majority of the case law supports [the] position that suits between carriers are to be apportioned according to common law negligence principles.").

Still, other than in circumstances where the parties are both carriers, federal courts have found that the Carmack Amendment preempts state law claims arising from the delivery, loss of, or damage of goods.[2] See, e.g., Dominion

---

2. Molly's cites to a string of cases in arguing that its contribution claim is both not preempted by the Carmack Amendment and allowed under federal common law principles. (Doc. # 35 at 7-8). However, Molly's fails to mention that these cases all invoke the carrier-carrier exception and thus

10

Res. Servs., Inc. v. 5K Logistics, Inc., No. 3:09-cv-315, 2010 WL 679845, at *5 (E.D. Va. Feb. 24, 2010) (preempting a third-party claim filed by a broker against a carrier); United Van Lines, 860 F. Supp. at 828-29 (barring state tort counterclaims by a carrier against a shipper); Waltrous, Inc. v. B.P.T. Air Freight Forwarding, Inc., No. 89-c-7900, 1990 U.S. Dist. LEXIS 2592, at *5-6 (N.D. Ill. Mar. 6, 1990) (finding a freight forwarder's state claims against a carrier preempted by the Carmack Amendment).

Here, holding Joule responsible for contribution to Molly's would affect Joule's potential liability for damages to Razipour's vessel. Furthermore, Molly's is not a carrier subject to the Carmack Amendment exception. (Doc. # 1-1 at ¶ 7). There is no exception to the Carmack Amendment for state

---

are not applicable here. See Compania, 2005 U.S. Dist. LEXIS 51171, at *4-5 (carrier-carrier exception); see also Gordon H. Mooney, Ltd. v. Farrell Lines, Inc., 616 F.2d 619, 625-26 (2d Cir. 1980) (allowing a contribution claim between an ocean carrier and an inland carrier); Hartog Trading Corp. v. M/V Presidente Ibanez, No. 90-2713, 1991 WL 33605, at *4-5 (E.D. La. Mar. 6, 1991) (involving two carriers' crossclaims against another carrier); Tokio Marine & Fire Ins. Grp., 156 F. Supp. 2d 889, 897-99 (N.D. Ill. 2001) (citing to a case invoking the carrier-carrier exception and explaining that if one of the parties were a freight forwarder, rather than a carrier, no claim would be allowed under the Carmack Amendment).

law claims made by marina servicers against carriers.

Molly's crossclaim is directly related to Razipour's Carmack Amendment claims against Joule. According to Molly's, Joule's negligence would be based on Joule's "[f]ailing to timely pickup and transport the [v]essel," "[f]ailing to provide a truck able to transport the [v]essel," "[p]roviding a truck with mechanical issues to transport the [v]essel," and "[f]ailing to timely deliver the [v]essel to Newport Beach, [California]." (Doc. # 27 at 12-13). Likewise, any negligence resulting from Joule "[l]eaving the [v]essel stored in a shipyard for weeks, exposed to the elements," "[a]llowing the alleged water intrusion in [Razipour's] [v]essel," "[a]dvising [Razipour] not to remove the hard top of the [v]essel," or "[a]dvising [Razipour] not to wrap the [v]essel," (Id.), is directly related to Joule's alleged failure to properly transport the vessel.

Thus, Molly's crossclaim is based squarely on Joule's allegedly negligent transportation and delivery of the vessel from Naples, Florida, to Newport Beach, California. Molly's itself admits that its "crossclaim arises out of the same transaction or occurrence that is the subject matter of

12

[Razipour's] [c]omplaint." (Doc. # 27 at 10).

Therefore, because Molly's crossclaim arises from the interstate shipment of goods, it is preempted by the Carmack Amendment and must be dismissed. See, e.g., Smith, 296 F.3d at 1247-48 (affirming the district court's order dismissing state tort claims that fell "squarely within the preemption coverage of the Carmack Amendment" because the claims were based on the carrier's failure to deliver goods); Tech Data Corp. v. Mainfreight, Inc., No. 8:14-cv-1809-T-23MAP, 2015 WL 1546639, at *2 (M.D. Fla. Apr. 7, 2015)(dismissing common law claims that were preempted by Carmack Amendment with prejudice); Am. Eye Way, Inc. v. Roadway Package Sys., Inc., 875 F. Supp. 820, 821 (S.D. Fla. 1995)(same).

**B.   Contribution Under Federal Common Law**

Molly's argues in the alternative that Joule should be liable for contribution under federal common law principles. (Doc. # 35 at 4). Molly's contends that its crossclaim for contribution for Razipour's contract and tort claims falls under the Court's admiralty or maritime jurisdiction due to the nature and subject matter of the contract being "necessary for the operation of a ship," (Id. at 4-5), and because

13

Molly's business of "maintaining a vessel at a marina on a navigable waterway is a traditional maritime activity to which maritime law applies." (Id. at 6). Joule counters that the Court does not have admiralty or maritime jurisdiction over Molly's crossclaim because "the damage occurred while the boat was [on land]." (Doc. # 44 at 3-4).

Nonetheless, the Court need not decide whether Molly's crossclaim falls under maritime or admiralty law. Just as state contract and tort claims that would enlarge a carrier's liability are preempted under the Carmack Amendment, courts also cannot supplement the Amendment with federal common law remedies. See, e.g., Cleveland v. Beltman N. Am. Co., 30 F.3d 373, 379-80 (2d Cir. 1994) (explaining that a federal common law claim for breach of the implied covenant of good faith and fair dealing "cannot exist alongside the Carmack Amendment" and that courts "should be reluctant to use federal common law to supplement comprehensive legislation"); Morris, 144 F.3d at 378 ("We hold that federal common law remedies are preempted by the Carmack Amendment."); Bear MGC Cutlery Co. v. Estes Express Lines, Inc., 132 F. Supp. 2d 937, 946 (N.D. Ala. 2001) (citing to Cleveland for the proposition

14

that the Carmack Amendment does not allow for federal common law remedies); Commercial Union Ins. Co. v. Forward Air, Inc., 50 F. Supp. 2d 255, 257 (S.D.N.Y. 1999) ("[I]n addition to the fact that no state law claims against carriers survive the enactment of the Carmack Amendment, no federal common law claim against a carrier may be fashioned either."). Therefore, whether Molly's might have a right to contribution under federal common law is irrelevant, as such a claim would not be allowed under the Carmack Amendment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Crossclaim-Defendant Joule Yacht Transport, Inc.'s Motion to Dismiss (Doc. # 31) is **GRANTED.**

(2) Molly's Marine Service, LLC's crossclaim is **DISMISSED** with prejudice.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 20th day of August, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE